THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT WOODRUM, Defendant-Appellant.

First District (4th Division)   Nos. 1—00—4124, 1—00—4125 cons.

Opinion filed December 23, 2004.

O'BRIEN, J., dissenting.

Michael J. Pelletier and Daniel J. Walsh, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and John E. Nowak, Assistant State's Attorneys, of counsel), for the People.

JUSTICE REID delivered the opinion of the court:

Following a bench trial, in this consolidated appeal Robert Woodrum challenges his conviction of child abduction and his sentence of 24 months' probation. Woodrum also challenges his sentence that he undergo HIV/AIDS testing and give samples so as to have his genetic markers recorded in a database. Woodrum advances the following four

issues: (1) whether an individual can be convicted of child abduction when the unlawful purpose forming the basis of the crime was based solely upon his thoughts that were not acted upon; (2) whether the trial court erred in refusing to grant Woodrum's request for a bill of particulars to specify the exact nature of the unlawful purpose forming the basis of the charges; (3) whether there has been a speedy trial violation where the State, with knowledge of all the facts of the case at the commencement of the prosecution, failed to allege each element of the offense in the previous indictments; and (4) whether the trial court may order a defendant convicted of child abduction to undergo either mandatory HIV/AIDS testing, genetic marker identification or, in this case, both. For the reasons that follow, we reverse the defendant's conviction and remand the matter for further proceedings.

## BACKGROUND

At the time of the offense, Woodrum was a 29-year-old single male suffering from schizophrenia and depression who was being treated with psychotropic medication. On more than one occasion, he videotaped children at play. On each occasion he taped the children, after finishing taping, Woodrum invited the children up to his parents' condominium to watch the video they just made. During one of the incidents he was videotaping, while the children were wrestling, one child announced that another child's fly was down. Woodrum said the girl should show him so he could tape it but the girl refused to allow him to do so. The parents of the children complained to the police. Woodrum was arrested and charged with child abduction. He gave a statement, not in a question and answer format, to the assistant State's Attorney. That statement was written by the assistant State's Attorney and was signed by Woodrum. The statement suggested that Woodrum became sexually aroused while videotaping the children, especially during the "open fly" incident. In the statement, Woodrum indicated he fantasized about having sex with the children and thought about masturbating but took no affirmative steps toward completing any of those acts.

Bond was initially set at $700,000 but was reduced to $150,000. Woodrum remained in custody until after his trial when he was released, subject to sex offender probation. The original indictments charged Woodrum with two separate occurrences that constituted child abduction. The first indictment related to the November 4, 1999, occurrence with the four children playing on the front lawn. This resulted in four counts. The second indictment related to events from the following day. At that time, Woodrum encountered children in the

laundry room and invited them up to his residence. That indictment contained three counts. Although these two indictments referenced the relevant statute and charged that Woodrum lured the children into a dwelling place without their parents' consent, neither indictment stated that Woodrum acted "with other than a lawful purpose."

The State made a motion to amend the indictments. The trial court granted the motion and Woodrum was reindicted in two separate indictments totaling seven counts of child abduction. The amended indictments claimed that Woodrum had lured the children into the condo "for other than a lawful purpose," but did not specify the nature of the unlawful purpose. The trial court detected another error in the second indictment, so a third version was created. Again the indictment did not specify the unlawful purpose.

Defense counsel filed a motion for a bill of particulars seeking to learn with specificity the nature of the unlawful purpose. The State responded that, under the statute, the luring of a child under the age of 16 without parental consent is *prima facie* evidence of "other than a lawful purpose." As such, the State argued before the trial court that further discovery was not necessary. The trial court denied the motion for a bill of particulars, holding that the burden falls to the defendant, in the nature of an affirmative defense, to show his actions were taken with a lawful purpose.

The defense filed a motion to dismiss claiming a speedy-trial problem and the failure to explain the alleged unlawful purpose.

Woodrum's counsel argued that the elements added to the subsequent versions of the indictments were additional charges based on facts known to the State at the commencement of the prosecution. Woodrum's counsel argued that the generic allegation that he acted with an unlawful purpose was a new element that constituted a new crime and that dismissal of the indictments was proper because Woodrum had been in custody for over 120 days. The trial court denied the motion to dismiss, stating that the subsequent indictments were "just re-indictments of the original charges" and that the amended indictments related back to the original date together with all by-agreement continuances, thereby eliminating any speedy-trial problem.

The children testified at trial that Woodrum never touched them or harmed them in any way, but that he told them not to tell their parents. Woodrum argued at trial that he only thought about doing things to the children, but that he never actually did anything. The State argued that the statute provides for a presumption such that "[it] did not have to show he completed an act." The trial court found Woodrum guilty, holding:

"But just as a picture of a naked child could be one of beauty, depending on the eye of the beholder, and the purpose of the beholder for taking it, it could also be something which would not have a lawful purpose. The statute states that luring a child into a house, dwelling, motor vehicle, who is under the age of sixteen, is prima facie evidence of other than a lawful purpose. The Defendant's statement is that he did these things because he enjoyed watching the children, he enjoyed especially watching if they showed parts of their body that were exposed, that these things sexually excited him. I cannot say that taking a videotape that sexually excites you, of little children, is a lawful purpose for videotaping. Therefore, the Defendant will be found guilty on all counts."

Defense counsel complained that the trial court was "shifting the burden to the defendant to prove that the unlawful purpose *** was not unlawful." Defense counsel reiterated the request for clarification as to the exact nature of the unlawful purpose the trial court found Woodrum had committed. Even in conviction, the trial court declined to honor Woodrum's request to learn the nature of the unlawful purpose.

Woodrum was sentenced to 24 months' sex offender probation. Over defense objection, Woodrum was also ordered to undergo an HIV/AIDS test and have his blood genetic markers placed on file.

## ANALYSIS

### I

### Standard of Review

■ "A criminal conviction will not be set aside on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt." *People v. Pollock*, 202 Ill. 2d 189, 217 (2002), citing *People v. Maggette*, 195 Ill. 2d 336, 353 (2001). "The standard for reviewing a challenge to the sufficiency of the evidence is well settled. When reviewing the sufficiency of the evidence to sustain a verdict on appeal, the relevant inquiry is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Pollock*, 202 Ill. 2d at 217, quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); *People v. Cooper*, 194 Ill. 2d 419, 430-31 (2000); *People v. Thomas*, 178 Ill. 2d 215, 231-32 (1997). "The same standard of review applies when reviewing the sufficiency of evidence in all criminal cases, regardless of whether the evidence is direct or circumstantial." *Pollock*, 202 Ill. 2d at 217, citing

*Cooper*, 194 Ill. 2d at 431; *People v. Digirolamo*, 179 Ill. 2d 24, 43 (1997); *People v. Gilliam*, 172 Ill. 2d 484, 515 (1996); see also *Maggette*, 195 Ill. 2d at 353. However, where the facts are not in dispute and there are no credibility issues such that our determination will turn exclusively on a question of law, we conduct a *de novo* review. *People v. Smith*, 191 Ill. 2d 408, 411 (2000); *People v. McGee*, 326 Ill. App. 3d 165, 168 (2001); *In re D.G.*, 144 Ill. 2d 404, 408-09 (1991). Because there is no dispute as to the content of the videotape, Woodrum's statement, or the testimony of the children allegedly abducted, we review this matter *de novo*.

■ As to the denial of Woodrum's motion for a bill of particulars, we review that order under an abuse of discretion standard because the trial court's decision is within its sound discretion. *People v. Lego*, 116 Ill. 2d 323, 336 (1987); 725 ILCS 5/111—6 (West 1998).

## II

## Woodrum's Thoughts, the "Other Than Lawful Purpose" and the Bill of Particulars

Woodrum argues on appeal that mere thoughts should not constitute evidence that he acted with an unlawful purpose. Woodrum also argues that the denial of the bill of particulars prejudiced his ability to prepare a defense because the indictments did not identify the unlawful purpose with specificity. Woodrum also argues that the permissive presumption found in the statute does not prove beyond a reasonable doubt that he acted with other than a lawful purpose.

The State responds that he used the promise of allowing the children to watch the tapes as a basis for getting them in the condominium and sexually exploiting them. The State argues that it is irrelevant that he did not follow through on his illicit thoughts. The State argues that the statute does not require that the defendant successfully complete the unlawful purpose. The State also responds that Woodrum was not convicted merely because of his thoughts and the possession of a videotape of the children. He was convicted because he used the videotape to entice the children to his parents' condominium. The State further responds that the denial of the bill of particulars was within the trial court's discretion and that he was sufficiently informed of the charges against him because the indictments tracked the statutory language.

■ The child abduction statute provides, in relevant part, as follows:

> "(b) A person commits child abduction when he or she:
>
> * * *
>
> (10) *Intentionally lures or attempts to lure* a child under the

age of 16 into a motor vehicle, building, housetrailer, or dwelling place without the consent of the parent or lawful custodian of the child *for other than a lawful purpose.*

For the purposes of this subsection (b), paragraph (10), *the luring or attempted luring* of a child under the age of 16 into a motor vehicle, building, housetrailer, or dwelling place without the consent of the parent or lawful custodian of the child *shall be prima facie evidence of other than a lawful purpose.*" (Emphasis added.) 720 ILCS 5/10—5(b)(10) (West 2000).

"(c) *It shall be an affirmative defense that*:

\* \* \*

(4) The person lured or attempted to lure a child under the age of 16 into a motor vehicle, building, housetrailer, or dwelling place *for a lawful purpose* in prosecutions under subsection (b), paragraph (10)." (Emphasis added.) 720 ILCS 5/10—5(c)(4) (West 2000).

"A primary rule of statutory construction is to give effect to the legislative intent by considering the entire statute, 'the evil to be remedied and the object to be attained.' " *People v. Marcotte*, 217 Ill. App. 3d 797, 800 (1991), quoting *People v. Ivy*, 133 Ill. App. 3d 647, 653 (1985). *Marcotte* explains that the object of the child abduction statute is "protecting the rights of custodial parents and protecting children from intentional removing, detaining, or concealing by those who have no legal right." *Marcotte*, 217 Ill. App. 3d at 800. *Marcotte* also explains that the evil to be remedied is the prevention of and punishment for "luring or attempting to lure a child under the age of 16 without the parent's consent." *Marcotte*, 217 Ill. App. 3d at 800. As a result, "[s]ection 10—5(b)(10) condemns the *intentional* luring of children without parental or custodial consent; that act establishes a violation of the statute. Since defendant is in the best position to know the lawfulness of his purpose, the legislature found it proper to place the burden of proving lawful purpose on the defendant. Section 10—5(b)(10), taken in conjunction with section 10—5(c)(4), specifically provides that a defendant accused of child abduction may raise 'lawful purpose' as an affirmative defense." (Emphasis added.) *Marcotte*, 217 Ill. App. 3d at 800.

It is undisputed that Woodrum videotaped the children on the front lawn and in the building. The tape shows nothing obscene or criminal. Though the activities depicted were undertaken at Woodrum's urging, the videotape merely depicts children engaged in horseplay. Woodrum told those children that they were being taped and could be seen on local television news, which was simply untrue. Woodrum then invited those children to join him in his parents' apartment where they could watch the videotape. It is equally undisputed

that Woodrum gave statements to the authorities postarrest that he experienced some measure of sexual arousal while watching the children on the videotape and that he *thought* about masturbating. Additionally, Woodrum admitted that he fantasized about having sexual relations with at least one of the four girls he videotaped. At all times relevant, Woodrum did not touch the children and, despite his admitted thoughts, neither exposed nor pleasured himself in their presence. In and of itself, the content of the videotape is innocuous. As a result, the entire prosecution is based upon Woodrum's thoughts, not his actions. The linchpin of the State's case is the admission by Woodrum that he had distasteful *fantasies* about the children and *thought* about masturbating. It is the admission in the statement to the authorities that purportedly turns an invitation into luring. Without that admission, the State has nothing but an unsupportable presumption. "The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it." *Bartnicki v. Vopper*, 532 U.S. 514, 529, 149 L. Ed. 2d 787, 803, 121 S. Ct. 1753, 1762 (2001). Woodrum's admission of his private thoughts and desires came after he was taken into custody. In order for the crime to be committed Woodrum would have to have *acted* with "other than a lawful purpose." There must be not only *mens rea*, but *actus reus*, "[a] wrongful deed which renders the actor criminally liable if combined with the *mens rea.*" Black's Law Dictionary 36 (6th ed. 1990). Videotaping children is not, in and of itself, a criminal act. Neither is showing children a nonobscene videotape. "There are many things innocent in themselves, however, such as cartoons, video games, and candy, that might be used for immoral purposes, yet we would not expect those to be prohibited because they could be misused." *Ashcroft v. The Free Speech Coalition*, 535 U.S. 234, 251, 152 L. Ed. 2d 403, 422, 122 S. Ct. 1389, 1402 (2002). Harboring unexpressed sexual desires, while repugnant in this context, is not criminal. Finally, in a private venue, masturbating is not illegal; *thinking about* masturbating doubly so.

"The sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people." *Ashcroft*, 535 U.S. at 244, 152 L. Ed. 2d at 417, 122 S. Ct. at 1399. It is perfectly understandable that people, particularly parents, would place their child's welfare at the pinnacle of importance to them. "Our society, like other cultures, has empathy and enduring fascination with the lives and destinies of the young." *Ashcroft*, 535 U.S. at 248, 152 L. Ed. 2d at 419, 122 S. Ct. at 1400. In order to protect children from sexual predators, legislatures everywhere have passed legislation. It is the burden of the State and the police to enforce the laws. That does not,

however, grant the State the unfettered right to prosecute someone for his or her thoughts. "The government 'cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts.' " *Ashcroft*, 535 U.S. at 253, 152 L. Ed. 2d at 423, 122 S. Ct. at 1403, quoting *Stanley v. Georgia*, 394 U.S. 557, 566, 22 L. Ed. 2d 542, 550, 89 S. Ct. 1243, 1249 (1969). The *Ashcroft* case, in the context of a first amendment challenge, explained that "[t]he right to think is the beginning of freedom." *Ashcroft*, 535 U.S. at 253, 152 L. Ed. 2d at 423, 122 S. Ct. at 1403.

■ Presumptions are legal devices by which a trier of fact may "assume the existence of a presumed or ultimate fact based on certain predicate or basic facts." *People v. Greco*, 204 Ill. 2d 400, 407 (2003); *People v. Henderson*, 329 Ill. App. 3d 810 (2002). "Mandatory presumptions in criminal cases are unconstitutional because they relieve the State of the burden of proof beyond a reasonable doubt and violate the due process clause by shifting the burden of persuasion to the criminal defendant." *Marcotte*, 217 Ill. App. 3d at 801, citing *Francis v. Franklin*, 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985). "On the other hand, an entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer an elemental fact from proof of the basic one, and which places no burden of any kind on the defendant, is clearly permissible. In that situation the basic fact may constitute *prima facie* evidence of the elemental fact." *Marcotte*, 217 Ill. App. 3d at 801. "When reviewing this type of evidentiary device, the Supreme Court has required the party challenging it to demonstrate its invalidity as applied to him." *Marcotte*, 217 Ill. App. 3d at 801, citing *County Court v. Allen*, 442 U.S. 140, 157, 60 L. Ed. 2d 777, 792, 99 S. Ct. 2213, 2224 (1979). "Where the permissive presumption is the lone basis for a finding of guilt, however, the presumed fact must flow beyond a reasonable doubt from the proven, predicate fact." *Greco*, 204 Ill. 2d at 408, citing *People v. Housby*, 84 Ill. 2d 415, 421 (1981).

■ The statute that Woodrum has been found guilty of violating requires that a defendant "intentionally lure" members of the identified class of young people "without the consent of the parent" to a specified type of location for "other than a lawful purpose." The presumption flows from the language of the statute authorizing courts to treat the luring or attempted luring as *prima facie* evidence of the unlawful purpose. If, as here, the State is unable or unwilling to articulate the exact nature of the other than lawful purpose, and the defendant's actual conduct is not criminal, then the statute is unconstitutional as applied to him because it is both vague and overly broad. It criminalizes Woodrum's conduct based solely upon what can

only be described as a mandatory presumption. A mandatory presumption "may affect not only the strength of the 'no reasonable doubt' burden but also the placement of that burden; it tells the trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." (Emphasis in original.) *Allen*, 442 U.S. at 157, 60 L. Ed. 2d at 792, 99 S. Ct. at 2225. Here the trial court presumed not only the alleged unlawful purpose, but also that the children had been lured into the house in the first place, as opposed to having been merely invited to view an innocuous videotape. In a classic "cart before the horse" scenario, the trial court presumed illegality where none exists, except locked in the mind of the defendant. Nothing illegal actually occurred and nothing illegal was attempted in the defendant's mother's apartment. If otherwise legal conduct can subject a defendant to prosecution, because both the "luring" of the children and the unlawful purpose can be presumed, then "men of ordinary intelligence have no way of ascertaining what breach of criminal or civil law may subject them to arrest and prosecution." *Landry v. Daley*, 280 F. Supp. 938, 955 (N.D. Ill. 1968), *rev'd on other grounds, Boyle v. Landry*, 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758 (1971). In *People v. Williams*, 133 Ill. 2d 449, 453-55 (1990), the Illinois Supreme Court declined to find the child abduction statute vague on its face because the "men of ordinary intelligence" described in *Landry* should know that violations of the criminal code can subject a defendant to prosecution. This is why the statute is unconstitutional as applied to Woodrum. By way of the presumption, the trial court criminalized conduct that does not violate the criminal code. In so doing, the trial court improperly shifted the burden to disprove the elemental fact instead of leaving that burden of prosecution entirely with the State. Even if this were but a permissive presumption, it rises to the level of error when the trial court refused to allow Woodrum's request for a bill of particulars. This case presents a unique set of facts and circumstances. This defendant was being asked to present proof he was not engaging in conduct with "other than a lawful purpose" without truly knowing what the alleged unlawful purpose actually was. By forcing the State to identify the alleged unlawful purpose, Woodrum would have been able to properly prepare an affirmative defense. Because the trial court declined to grant the bill of particulars, Woodrum was denied a fair trial and the statute in question is unconstitutional as applied.

## III

### Speedy Trial

Woodrum next argues a violation of his right to a speedy trial. He

was taken into custody on November 10, 1999. Woodrum argues he was held in custody for over 120 days while the State delayed in obtaining proper indictments. Though all the relevant indictments cited to the correct statutory provision, neither of the two original indictments charged that Woodrum acted "with other than a lawful purpose." Woodrum argues that, in order to be a proper indictment for child abduction, it must contain the missing language. Accordingly, Woodrum argues that his custody exceeded 120 days without him being actually charged with a crime. Woodrum admits that much of the delay was as a result of agreed continuances. However, Woodrum argues that those delays should not be credited against him because they were obtained in connection with the trial of the original charges and not with respect to the new and additional charges containing the proper language. Woodrum further argues that, because this issue involves the application of the law to undisputed facts, this court should review the matter *de novo*.

The State objects to the characterization of the final set of indictments as relating to new and additional charges. The State argues that the relation back doctrine covers the delays because the reindictments were amendments of the original indictments. According to the State, the subsequent indictments essentially duplicated the original set of indictments because they alleged the same crimes against the same children on the same dates at the same location. The State also argues that Woodrum repeatedly agreed to almost all of the continuances and that the delays should toll the speedy trial period. The State further argues that the correct standard of review is abuse of discretion when the reviewing court must review the trial court's determination as to which party is responsible for the delay.

A defendant possesses both a constitutional and statutory right to a speedy trial. *People v. Mayo*, 198 Ill. 2d 530, 535 (2002), citing U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103—5(a) (West 1998). The speedy-trial statute provides that "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103—5(a) (West 1998). "When a defendant is not released on bail and remains in custody, the 120-day statutory period begins to run automatically from the day the defendant is taken into custody and no formal demand for trial is required." *Mayo*, 198 Ill. 2d at 536, citing *People v. Cooksey*, 309 Ill. App. 3d 839, 843 (1999). "A defendant not tried within the statutory period shall be discharged from custody and have the charges dismissed." *Mayo*, 198 Ill. 2d at 536, citing 725 ILCS 5/103—5(d), 114—1(a)(1) (West 1998); *People v. Hall*, 194 Ill. 2d

305, 327 (2000); *People v. Bowman*, 138 Ill. 2d 131, 137 (2000). "The duty is upon the State to bring the defendant to trial within the statutory period." *Mayo*, 198 Ill. 2d at 536, citing *People v. Turner*, 128 Ill. 2d 540, 550 (1989); *People v. Jones*, 104 Ill. 2d 268, 274 (1984). " 'The statute is to be liberally construed, with each case being decided on its own facts.' " *Mayo*, 198 Ill. 2d at 536, quoting *Jones*, 104 Ill. 2d at 273-74. "In reviewing a speedy-trial claim, examination of both the transcript of proceedings and the common law record is necessary to do justice to both the State and the defendant." *Mayo*, 198 Ill. 2d at 536, citing *People v. Sojack*, 273 Ill. App. 3d 579, 582-83 (1995). "On appeal, 'a trial court's determination as to whether a delay is attributable to the defendant is entitled to much deference and should be sustained absent a clear showing that the trial court abused its discretion.' " *Mayo*, 198 Ill. 2d at 535, quoting *People v. Hall*, 194 Ill. 2d 305, 327 (2000).

"In *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), the United States Supreme Court addressed the nature of the constitutional right to a speedy trial and recognized the need to set out 'criteria by which [a constitutional] speedy trial right is to be judged.' " *People v. Kaczmarek*, 207 Ill. 2d 288, 294 (2003), quoting *Barker*, 407 U.S. at 516, 33 L. Ed. 2d at 109, 92 S. Ct. at 2185. "[T]he Supreme Court in *Barker* identified four factors to be considered: the length of the delay; the reasons for the delay; defendant's assertion of his right; and the prejudice, if any, to the defendant. [Citation.] No one factor is dispositive." *Kaczmarek*, 207 Ill. 2d at 294-95, citing *Barker*, 407 U.S. at 530-33, 33 L. Ed. 2d at 116-19, 92 S. Ct. at 2192-93.

■ This court has previously held that " '[w]here new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained.' " *People v. Stanley*, 266 Ill. App. 3d 307, 309-10 (1994), quoting *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981). In *Stanley*, a defendant's indictment was changed to add a completely different form of aggravated criminal sexual assault than was contained in the original version. Originally, Williams was charged with an act of sexual intercourse with a minor involving vaginal penetration. In the subsequent version, Williams was charged

with forcible oral copulation. This is a completely different physical act. Here, though all versions of the indictment correctly cited to the statutory provisions Woodrum allegedly violated, the crime was not correctly charged until the addition of the statutory language regarding the accused's unlawful purpose. The unlawful purpose is a necessary element of the crime. Without it, no crime has been committed. We, therefore, conclude that by the time the indictment was correct, Woodrum had been in custody for over 120 days. Because the original and subsequent indictments were defective, any delays occasioned by the agreed continuances documented in the record cannot be charged against Woodrum. It was error for the trial court to deny Woodrum's motion to dismiss.

## IV

### Punishment Not Authorized by Statute

■ Finally, Woodrum seeks that the HIV/AIDS/genetic marker order be expunged because it is not authorized under the statute.

The State agrees that the statute does not authorize testing for HIV/AIDS. To that end, the trial court's ruling was in error. As for genetic marker testing, the State responds that the statute authorizes such testing when the sentencing court, upon motion, makes a finding that the child luring involved an intent to commit sexual penetration or sexual conduct as defined in the criminal code. The State agrees that the trial court failed to make such a finding before ordering the genetic analysis and that portion of the sentencing order was in error.

We agree that this portion of the trial court's order is in error. The list of offenses for which a trial court is authorized to order testing of this nature is found in section 5—5—3(g) of the Unified Code of Corrections. 730 ILCS 5/5—5—3(g) (West 2000). Such testing is only authorized under the statute when a court makes a specific finding that the child luring involved an intent to commit sexual penetration or sexual conduct as defined in the criminal code. 720 ILCS 5/12—12(e), (f) (West 1998); 730 ILCS 5/5—4—3(g)(3) (West 1998). The facts of this case do not support such a finding or such an order by the trial court. The sentence flowing from that error is reversed. The matter is remanded for the trial court to expunge from the records the order for HIV/AIDS testing and genetic marker identification.

## CONCLUSION

For the reasons articulated herein, Woodrum's conviction is reversed. The matter is remanded for the trial court to expunge any

and all orders of the court relating to HIV/AIDS and genetic marker testing.

Reversed and remanded with directions.

NEVILLE, J., concurs.

JUSTICE O'BRIEN, dissenting:

I respectfully dissent from the majority on all issues.

This case is about acts and the purposes or reasons for those acts.

Here, defendant was convicted of the *act* of luring children. His *purpose* for luring them was for his potential sexual gratification with them which is other than a lawful purpose. How is his purpose proven? The statute reads: "the luring or attempted luring of a child under the age of 16 into a *** dwelling place without the consent of the parent or lawful custodian of the child shall be prima facie evidence of other than a lawful purpose." 720 ILCS 5/10—5(b)(10) (West 2000). Proof of his *purpose* at the moment of the *act* of luring is the concern of this portion of the statute.

There was no evidence rebutting the *prima facie* evidence that he lured them for other than a lawful purpose; indeed, defendant's own admissions show that the purpose for luring them was for his potential sexual gratification/contact with the children. That his purpose was not fulfilled is irrelevant.

For the same reasons, a bill of particulars regarding subsequent acts was irrelevant and its denial was not error.

Further, the speedy trial statute was not violated because the subsequent indictments were re-indictments of the original abduction charges and no new offenses were added. *People v. Stanley*, 266 Ill. App. 3d 307 (1994).

Accordingly, I respectfully dissent and would affirm the judgement of the circuit court. Also, by the suggestion and consent of the State, I would vacate the order requiring a blood submission.