Docket No. 99984.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT WOODRUM, Appellee.

*Opinion filed October 5, 2006.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Garman, and Karmeier concurred in the judgment and opinion.

Justice Burke took no part in the decision.

## OPINION

Following a bench trial, defendant Robert Woodrum was found guilty of seven counts of child abduction (720 ILCS 5/10–5(b)(10) (West 1998)). The circuit court sentenced him to 24 months' probation. As conditions of probation, defendant was required to complete a sex offender program and register as a sex offender. Defendant was also ordered to submit blood for HIV/AIDS testing and genetic marker identification. The appellate court reversed defendant's convictions and remanded for the circuit court to expunge the order requiring him to submit blood samples for HIV/AIDS testing and genetic marker identification. 354 Ill. App. 3d 629.

We allowed the State's petition for leave to appeal (134 Ill. 2d R. 317). The State raises several claims of error on appeal to this court,

including that the appellate court erred in finding a presumption in the child abduction statute unconstitutional. We hold that the child abduction statute creates an unconstitutional mandatory presumption, but the application of the presumption in this case was harmless error. We therefore reverse the judgment of the appellate court.

## I. BACKGROUND

Defendant was arrested on November 10, 1999. He was subsequently charged in two indictments with a total of seven counts of child abduction. The first indictment alleged that on or about November 4, 1999, defendant intentionally lured S.S., N.W., G.S., and A.T., each under 16 years of age, into a dwelling without the consent of a parent or lawful custodian in violation of section 10‒5(b)(10) of the Criminal Code of 1961 (Code) (720 ILCS 5/10‒5(b)(10) (West 1998)). The second indictment alleged that on or about November 5, 1999, defendant intentionally lured L.M., A.T., and S.S., each under 16 years of age, into a dwelling without the consent of a parent or lawful custodian in violation of section 10‒5(b)(10) of the Code (720 ILCS 5/10‒5(b)(10) (West 1998)).

The State later filed amended indictments. The amended indictments, filed on June 22, 2000, essentially restated the previous allegations and added that defendant acted "for other than a lawful purpose." The State subsequently filed a third set of indictments to correct scriveners errors.

Defendant filed a motion for discovery. In his motion, defendant sought, among other things, a bill of particulars stating the "specific act that had an unlawful purpose" and the "specific unlawful purpose" he allegedly possessed. Defendant asserted this information was essential to the preparation of a defense. The State filed an objection to the request for a bill of particulars. The State asserted "a video tape of the crime and the defendant's detailed written confession have been tendered to the defense giving unusually detailed discovery on what evidence the state is relying on to sustain their burden of proof." At the hearing on defendant's motion, the prosecutor stated:

> "In this particular case, the evidence against the Defendant is ninety percent on a video tape of the crime and is [*sic*] a written confession as to what happened. *** The only thing that is going to be added in this case is to have the victims

identify themselves on tape and the parents to say they didn't give him consent. I have never seen a case in this Courtroom where the Defense has a better outline of exactly what the State is going to prove because not one word will be changed on the tape and not one word will be changed on the statement, so Counsel is well prepared on what is going to happen."

The trial court observed that the act of luring a child under 16 years of age into a dwelling without the parent's consent constitutes *prima facie* evidence of other than a lawful purpose under the child abduction statute. The court stated that the "[b]urden basically falls to the Defendant to show that it was an affirmative defense. That there was a lawful purpose involved." The trial court, therefore, found a bill of particulars was not necessary and denied defendant's motion.

On July 28, 2000, defendant moved to dismiss the indictments, claiming his right to a speedy trial had been violated. At the hearing on the motion, defendant asserted that any delays in connection with the original charges could not be attributed to him on the subsequent indictments because those indictments contained new and additional charges. The trial court denied defendant's motion to dismiss, finding that the subsequent indictments were "just the re-indictment of the original charges."

At trial, the State introduced a videotape of the children and defendant's written statement. Additionally, several of the children and their parents testified. The evidence showed that four girls were playing in front of a condominium building on November 4, 1999. The girls were eight and nine years old. Defendant came outside and began videotaping them. Defendant asked the girls to wrestle or "cat fight." While the girls were fighting, one of them stated another girl's "fly was down." Defendant stated "[l]et's see it" while trying to videotape the girl. The girl turned around and zipped up her pants.

Defendant invited the children to watch the videotape inside the condominium where he lived with his parents. The girls went inside with defendant and watched the tape. While they were still in the condominium, defendant asked the girls if they would like to "have an Olympics show." Defendant videotaped them while they did cartwheels, somersaults, and back bends. Defendant and the children then watched the second videotape. After watching the second tape,

defendant became worried that his mother would return and find the girls inside the condominium. Defendant, therefore, told them to leave and "not to say anything to their parents."

The next day, two of the girls and an eight-year-old boy were playing outside when they heard music coming from the building. The children went into the laundry room where defendant was listening to music while doing his laundry. Defendant had his video camera. At defendant's request, the children began wrestling. Defendant videotaped the children as they wrestled and spun around on a chair.

Defendant then invited the children to watch the videotape inside his parents' condominium. While defendant and the children were watching the videotape, the father of one of the children knocked on the door. Defendant answered the door, and the girl left with her father. The other two children also left. As these two children were leaving, defendant told them not to tell anyone that they had been in his condominium watching videotapes. The parents of these children did not give defendant permission to have them in his residence on either of these occasions.

The mother of two of the children involved in these incidents later went to defendant's condominium. She demanded that defendant give her the videotape of her children. Defendant initially refused, but produced the videotape after the mother of the children threatened to call the police. After watching the videotape, the mother of the children gave it to the police.

Defendant was arrested and gave a written statement recounting these events. Defendant asserted that he was sexually excited by the fact that the girl's zipper was open. While that same girl was doing the "Olympics show," he could see her exposed stomach. Defendant stated he was sexually excited and hoped to see more of her body. Defendant thought about masturbating while watching the girls view the videotape. While he was videotaping the girls, he "fantasized that he thought it would be nice to see them naked 'cat fighting.' " Defendant further stated that he "had a fantasy about having sex with the four girls he videotaped." Defendant knew it was wrong to have the children in his residence without the consent of their parents.

Defendant moved for a directed verdict at the close of the State's case. The trial court denied defendant's motion. Defendant's mother

then testified that defendant took pictures with his video camera as a hobby.

In closing argument, the prosecutor asserted that defendant's statement showed he invited the children into the condominium for his own sexual gratification or excitement. Therefore, the evidence was sufficient to show defendant lured the children inside for an unlawful purpose. After taking a recess to read defendant's statement, the trial court found defendant guilty of child abduction, stating:

> "The defense is correct that many cases, just taking a video tape is not an unlawful act, does not have an unlawful purpose. But just as a picture of a naked child could be one of beauty, depending upon the eyes of the beholder, and the purpose of the beholder for taking it, it could also be something which would not have a lawful purpose. The statute states that luring a child into a house, dwelling, motor vehicle, who is under the age of sixteen, is prima facie evidence of other than a lawful purpose. The Defendant's statement is that he did these things because he enjoyed watching the children, he enjoyed especially watching if they showed parts of their body that were exposed, that these things sexually excited him. I cannot say that taking a video tape that sexually excites you, of little children, is a lawful purpose for videotaping. Therefore, the Defendant will be found guilty on all counts."

Defendant's attorney asked for clarification of the court's decision concerning the unlawful purpose. The court stated:

> "What I said was, the prima facie evidence is that his luring *** was for other than a lawful purpose. He has not shown he did this for a lawful purpose, and his taping, taking the video tape for exciting himself is not a lawful purpose, and therefore, I'm making a finding of guilty."

The trial court sentenced defendant to 24 months' probation. The court also ordered defendant to submit blood samples for HIV/AIDS testing and genetic marker identification. Defendant remained in custody from the date of his arrest until he was sentenced.

The appellate court held that defendant was convicted based upon his constitutionally protected thoughts rather than his actions. 354 Ill. App. 3d at 635-37. Additionally, the court concluded that the

child abduction statute, as applied to defendant, contained an unconstitutional mandatory presumption. 354 Ill. App. 3d at 637-38. Further, the trial court erred in denying defendant's motion for a bill of particulars and in denying his motion to dismiss based on a violation of his statutory right to a speedy trial. 354 Ill. App. 3d at 639-41. The State conceded that the trial court was not authorized to order defendant to submit to HIV/AIDS and genetic marker identification testing in the circumstances of this case. 354 Ill. App. 3d at 641. The appellate court agreed that the trial court's order in this regard was error. 354 Ill. App. 3d at 641. The appellate court, therefore, reversed defendant's convictions of child abduction and remanded to the trial court for the purpose of expunging the order requiring defendant to submit to those tests. 354 Ill. App. 3d at 641-42.

We allowed the State's petition for leave to appeal. 134 Ill. 2d R. 317.

## II. ANALYSIS

The State raises both constitutional and nonconstitutional issues in this appeal. This court will not address a constitutional question if an appeal can be decided on other grounds. *People v. Lee*, 214 Ill. 2d 476, 482 (2005). We will, therefore, first address the State's arguments that do not raise constitutional claims.

## A. Speedy Trial

The State argues that defendant's statutory right to a speedy trial was not violated. The State contends the subsequent indictments did not add any new charges but, rather, essentially duplicated the original charges. The delays that defendant agreed to on the original charges should, therefore, continue to be attributed to him on the subsequent indictments.

In response, defendant initially asserts that the original indictments failed to allege that he acted with "other than a lawful purpose." Defendant argues that the State held him in custody for over 120 days before properly charging him with child abduction by including this element of the offenses in the subsequent indictments, thus violating his statutory right to a speedy trial.

The cases defendant cites in support of this argument only address the sufficiency of the charging instrument. See *People v. Pujoue*, 61 Ill. 2d 335 (1975); *People v. Abrams*, 48 Ill. 2d 446 (1971). These cases do not discuss speedy-trial challenges. This argument is more properly addressed to challenging the indictments themselves than to a speedy-trial challenge.

Moreover, defendant's argument is without merit because the original indictments were sufficient to allow him to prepare his defense. Defendant never sought dismissal of the original indictments in the trial court. When a defendant challenges the sufficiency of an indictment for the first time on appeal, a court of review need only determine whether the indictment apprised the defendant of the precise offense charged with sufficient specificity to prepare his defense. *People v. Phillips*, 215 Ill. 2d 554, 562 (2005). This is the proper standard for determining whether defendant was prejudiced by the allegedly defective original indictments. We will not look to formal rules of pleading in analyzing defendant's speedy-trial challenge.

The charges in the original indictments were complete with the exception that they did not include the phrase "for other than a lawful purpose." The original indictments included the correct statutory citation for these offenses, and the statutory language contained that phrase. We find that the original indictments sufficiently notified defendant of the charges for the purpose of preparing a defense. Thus, defendant was not prejudiced by the allegedly defective indictments for speedy-trial purposes. The continuances defendant agreed to on the original indictments are properly charged to him in connection with those indictments. Defendant's right to a speedy trial was not violated by holding him for over 120 days on the original indictments.

Defendant also argues that the subsequent charges of child abduction constitute new and additional charges. Defendant asserts that any delay cannot be attributed to him because those charges were not before the court at the time of the continuances. Therefore, defendant argues the trial court erred in denying his motion to dismiss on speedy-trial grounds.

Defendants possess both constitutional and statutory rights to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I,

§8; 725 ILCS 5/103−5(a) (West 1998). While these provisions address similar concerns, " 'the rights established by each are not necessarily coextensive.' " *People v. Mayo*, 198 Ill. 2d 530, 535 (2002), quoting *People v. Hall*, 194 Ill. 2d 305, 326 (2000). Defendant only asserts a violation of his statutory right to a speedy trial and has not raised a constitutional issue.

The speedy-trial statute provides that every person in custody for an alleged offense must be tried within 120 days from the date that person was taken into custody unless delay is occasioned by the defendant. 725 ILCS 5/103−5(a) (West 1998). If a defendant remains in custody, the 120-day statutory period begins to run automatically, and a formal demand for trial is not required. *Mayo*, 198 Ill. 2d at 536. A defendant not tried within the statutory period must be discharged from custody, and the charges must be dismissed. 725 ILCS 5/103−5(d), 114−1(a)(1) (West 1998); *Mayo*, 198 Ill. 2d at 536; *People v. Kliner*, 185 Ill. 2d 81, 114-15 (1998).

Any period of delay occasioned by the defendant tolls the speedy-trial period. *Mayo*, 198 Ill. 2d at 536. An agreed continuance generally constitutes an act of delay attributable to the defendant. *Kliner*, 185 Ill. 2d at 115. Delays attributable to a defendant in connection with the original charges, however, are not always attributable to the defendant on subsequently filed charges. On this point, the appellate court has stated:

> "Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained." *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981).

This court subsequently clarified that this rule applies only when the original and subsequent charges are subject to compulsory joinder.

*People v. Williams*, 204 Ill. 2d 191, 207 (2003); *People v. Gooden*, 189 Ill. 2d 209, 218 (2000).

In this case, defendant does not dispute that he agreed to delays on the original indictments. Instead, defendant contends that the delays on the original charges cannot be attributed to him in connection with the subsequent indictments. The resolution of this issue depends upon whether the charges in the subsequent indictments were "new and additional." This issue involves a comparison of the charges contained in the indictments. The facts as they relate to this issue are not in dispute. Thus, this is a legal issue that is reviewed *de novo*. See *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005) (*de novo* standard applies when facts are undisputed and appeal involves only a legal issue).

This court has not previously defined when charges are "new and additional" within the meaning of the speedy-trial statute. However, we have stated the purpose of the rule announced in *Williams* is to prevent "trial by ambush." *Williams*, 204 Ill. 2d at 207. In the absence of such a rule:

> "[t]he State could lull the defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges. *** When the State filed the more serious charges, the defendant would face a Hobson's choice between a trial without adequate preparation and further pretrial detention to prepare for trial." *Williams*, 204 Ill. 2d at 207.

Thus, the purpose of the rule is to prevent the State from surprising a defendant with new and additional charges, thereby circumventing the defendant's statutory right to a speedy trial. See *Williams*, 204 Ill. 2d at 207.

The original indictments filed in this case are virtually identical to the subsequent ones, with the exception that the subsequent indictments added the phrase "for other than a lawful purpose." The original and subsequent indictments contained the same statutory citation for the charges. The phrase "for other than a lawful purpose" is part of the statute cited in the indictments. Additionally, the factual basis was the same for the original and subsequent indictments. The addition of the phrase "for other than a lawful purpose" did not

transform the charges. Rather, as the trial court found, the subsequent indictments were essentially a "re-indictment of the original charges."

In this case, defendant could not have been surprised by the subsequent charges because they were essentially the same as the original ones. Based on these facts, we conclude that the charges in the subsequent indictments are not "new and additional" for purposes of defendant's speedy-trial challenge. The delays attributable to defendant on the original indictments continue to be attributable to him on the subsequent indictments. Accordingly, defendant's statutory right to a speedy trial was not violated.

## B. Bill of Particulars

The State also contends that the trial court did not abuse its discretion in denying defendant's motion for a bill of particulars because the indictments sufficiently apprised him of the nature and elements of the offenses. In response, defendant argues that the denial of his motion for a bill of particulars deprived him of the ability to prepare a defense to the charges. Defendant asserts the denial of his motion left him to "guess among hundreds of potential offenses" that could have constituted the "other than a lawful purpose" element of child abduction.

When an indictment fails to specify the particulars of the charged offense sufficiently to enable the defendant to prepare a defense, the trial court may require the State to furnish a bill of particulars. 725 ILCS 5/111–6 (West 1998). The purpose of a bill of particulars is to give the defendant notice of the charge and to inform the defendant of the particular transactions in question, thus enabling preparation of a defense. *Kliner*, 185 Ill. 2d at 137-38. There is no need for a bill of particulars when the indictment sufficiently informs the defendant of the charged offense. *People v. Lego*, 116 Ill. 2d 323, 337 (1987). A trial court's decision on a motion for a bill of particulars is reviewed for abuse of discretion. *Lego*, 116 Ill. 2d at 336-37. An abuse of discretion will be found only when the trial court's decision is arbitrary and no reasonable person would adopt the view of the court. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991).

Defendant claims a specific statement of the alleged unlawful purpose was necessary to prepare a defense to these charges. In its written objection to the request for a bill of particulars, however, the

State informed defendant that the evidence consisted of the videotape and defendant's "detailed written confession." At the hearing on defendant's motion, the prosecutor stated that the only additional evidence to be presented was testimony of the children identifying themselves on the videotape and the parents' testimony that defendant did not have permission to take the children inside his residence. At trial, the State confined its evidence to the videotape, defendant's written statement, and the testimony of the children and their parents.

The record shows that defendant was aware of the charges and the alleged underlying transactions. Moreover, he knew the State would introduce his statements at trial and rely upon them as the basis for the alleged unlawful purpose. Defendant's statements of his sexual thoughts and intentions identified the alleged unlawful purpose. An intent to commit a sex offense can easily be inferred from defendant's statements. We find that the indictment and the State's disclosures were sufficient to enable defendant to prepare his defense. The trial court, therefore, did not abuse its discretion in denying defendant's motion for a bill of particulars.


## C. Vagueness

In a related claim, defendant argues that the child abduction statute did not give him adequate notice of his allegedly unlawful purpose. Moreover, as a result of the denial of his motion for a bill of particulars, defendant was forced to go to trial without notice of the allegedly unlawful purpose. Defendant, therefore, argues the child abduction statute is unconstitutionally vague as applied to him.

To comply with due process requirements, the proscription of a criminal statute must be clearly defined and provide a sufficiently definite warning of the prohibited conduct as measured by common understanding and practices. *People v. Jihan*, 127 Ill. 2d 379, 385 (1989). Criminal statutes must be definite so that a person of ordinary intelligence will have a reasonable opportunity to know what conduct is prohibited. *Jihan*, 127 Ill. 2d at 385. Additionally, a definite criminal statute prevents arbitrary and discriminatory enforcement by police officers, judges, and juries. *People v. Haywood*, 118 Ill. 2d 263, 269 (1987).

This court has previously held that the phrase "other than a lawful purpose" in the child abduction statute is not

unconstitutionally vague on its face. *People v. Williams*, 133 Ill. 2d 449, 454 (1990). This phrase, given its ordinary meaning, implies actions that violate the Criminal Code. *Williams*, 133 Ill. 2d at 454. Thus, the phrase gives adequate notice of the conduct that will subject a person to criminal penalties. *Williams*, 133 Ill. 2d at 453-54.

Further, as noted above, defendant's unlawful purpose or intent was apparent from his detailed statement. The statement implied an intent to commit a sex offense. Defendant had notice of the unlawful purpose the State was seeking to prove based on the indictment and on the State's evidentiary disclosures. Given these facts, we conclude that the child abduction statute is not unconstitutionally vague as applied to defendant.

## D. First Amendment Claims

Next, the State contends that the child abduction statute is constitutional as applied to defendant because he was not convicted for his private thoughts. Rather, defendant was convicted based on his actions of luring the children into his residence with an unlawful purpose. Defendant's statements that he wanted to see the children naked and have sex with them revealed his intent to gratify himself sexually with the children. Thus, defendant acted with other than a lawful purpose when he lured the children into his residence for his potential sexual gratification.

Defendant argues that he was convicted based solely upon the thoughts he revealed in his statement. However, any thoughts that he had of committing a criminal offense do not, by themselves, constitute an offense. According to defendant, the court violated his rights under the first amendment to the United States Constitution by using his private thoughts as the sole basis for concluding that he acted with other than a lawful purpose.

The first amendment prohibits the government from premising legislation on the desirability of controlling a person's private thoughts. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253, 152 L. Ed. 2d 403, 423, 122 S. Ct. 1389, 1403 (2002), quoting *Stanley v. Georgia*, 394 U.S. 557, 566, 22 L. Ed. 2d 542, 550, 89 S. Ct. 1243, 1249 (1969). The Supreme Court has, therefore, drawn distinctions between ideas and conduct. *Ashcroft*, 535 U.S. at 253, 152 L. Ed. 2d at 423, 122 S. Ct. at 1403. The government cannot regulate mere

thought without conduct. *Doe v. City of Lafayette*, 377 F.3d 757, 765 (7th Cir. 2004), citing *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 67-68, 37 L. Ed. 2d 446, 463, 93 S. Ct. 2628, 2640-41 (1973). Regulations targeting thought plus conduct, however, do not implicate the first amendment's freedom of mind principle. *City of Lafayette*, 377 F.3d at 765 (citing *Paris Adult Theatre I*, 413 U.S. at 67-68, 37 L. Ed. 2d at 463, 93 S. Ct. at 2640-41, and *Osborne v. Ohio*, 495 U.S. 103, 109, 109 L. Ed. 2d 98, 109, 110 S. Ct. 1691, 1696 (1990).

In *City of Lafayette*, the city banned John Doe, a person with a long history of sex offenses, from its public parks. *City of Lafayette*, 377 F.3d at 758. The ban was imposed by the city after Doe was observed " 'cruising' parks and watching young children." *City of Lafayette*, 377 F.3d at 759. In his deposition testimony, Doe stated he went to the park to look for children. *City of Lafayette*, 377 F.3d at 759-60. When he saw several teenage children in the park, he thought of possibly exposing himself to them or having sexual contact with them. *City of Lafayette*, 377 F.3d at 760. Doe stated, "Those thoughts were there, but they, you know, weren't realistic at the time. They were just thoughts." *City of Lafayette*, 377 F.3d at 760.

Doe challenged the ban, contending, in pertinent part, that it violated his constitutional rights under the first amendment because the city was punishing him for his private thoughts. *City of Lafayette*, 377 F.3d at 765. The court noted that the city had not banned Doe from having sexual fantasies about children. *City of Lafayette*, 377 F.3d at 766-67. Doe did not simply entertain thoughts, however. He took dangerous steps toward gratifying his sexual urges toward children by going to a place where he could find children in a vulnerable situation. *City of Lafayette*, 377 F.3d at 767. The court concluded that it would be required to ignore Doe's actions in order to characterize the ban as directed purely at thought. *City of Lafayette*, 377 F.3d at 767. The court further explained:

> "The children and their parents are not concerned about Mr. Doe's thoughts. They are concerned about his coming to the park to achieve sexual gratification. They do not need to wait until a child is molested to take steps to protect their children. The First Amendment does not prohibit the City from taking the action it did to protect its children. It does

not require the City to act in an ostrichlike fashion and expose the children of the City to the risk that, on a future date, a child will wander further from the group, present a better opportunity and experience the tragic consequences." *City of Lafayette*, 377 F.3d at 767.

We recognize that *City of Lafayette* is a civil case involving a ban from the city's public parks. The first amendment principles discussed in that case are, nevertheless, equally applicable to this criminal case. Applying those principles results in a finding that defendant was not punished simply for having sexual fantasies about children. Rather, he was punished for acting on those thoughts by luring the children into his residence. If defendant had not acted by luring the children, he would not be subject to any criminal penalty. This is not a case where defendant was convicted based solely upon his thoughts or fantasies.

We note that defendant also argues he was not convicted based on his conduct as he did not attempt or commit any criminal offense after the children were inside his residence. Thus, defendant apparently contends that the State was required to prove that he attempted or committed an offense inside the residence to sustain the child abduction convictions.

A person commits child abduction by intentionally luring or attempting to lure a child under 16 years of age into a dwelling without the consent of a parent or lawful custodian for other than a lawful purpose. 720 ILCS 5/10–5(b)(10) (West 1998). The language of this statute does not require proof of a separate criminal offense after a child has been lured into a dwelling.

The child abduction statute is analogous to the offense of residential burglary. A residential burglary is committed when a person knowingly and without authority enters the dwelling of another with the intent to commit a felony or theft therein. 720 ILCS 5/19–3(a) (West 1998). This court has held that the offense of residential burglary " 'is complete upon entering with the requisite intent. The actual commission of the intended offense is irrelevant.' " *People v. Maggette*, 195 Ill. 2d 336, 353 (2001), quoting *People v. Palmer*, 83 Ill. App. 3d 732, 734 (1980).

Similarly, the offense of child abduction is complete upon luring a child into a dwelling with the requisite unlawful purpose. The State

is not required to prove that defendant completed his unlawful purpose or intended offense after luring the children inside. The completion or attempted completion of the unlawful purpose would result in a prosecution for a separate offense. Thus, contrary to defendant's argument, the State was not required to prove that a separate crime or attempt occurred inside the residence to sustain the charge of child abduction.

In sum, defendant was not convicted based solely upon his thoughts or sexual fantasies. He was convicted for his actions in luring the children into his residence with an unlawful purpose. Accordingly, defendant's convictions were not obtained in violation of his constitutional rights under the first amendment.

### E. Constitutionality of the Presumption

The State's final contention is that the appellate court erred in finding the presumption in section 10−5(b)(10) of the child abduction statute unconstitutional. The State asserts that the presumption is constitutional because it is permissive, rather than mandatory. Defendant responds that section 10−5(b)(10) creates an unconstitutional mandatory presumption.

The constitutionality of a statute is reviewed *de novo*. *People v. Malchow*, 193 Ill. 2d 413, 418 (2000). All statutes are presumed to be constitutional, and the party challenging the statute bears the burden of rebutting that presumption by demonstrating clearly a constitutional violation. *People v. Dinelli*, 217 Ill. 2d 387, 397 (2005), quoting *People v. Greco*, 204 Ill. 2d 400, 406 (2003). This court has a duty to construe a statute in a manner that upholds its constitutionality, if reasonably possible. *Dinelli*, 217 Ill. 2d at 397.

A presumption is a legal device that either permits or requires the trier of fact to assume the existence of an ultimate fact, after establishing certain predicate facts. *People v. Pomykala*, 203 Ill. 2d 198, 203 (2003), citing *People v. Watts*, 181 Ill. 2d 133, 141 (1998). Although due process requires the State to prove every element of an offense beyond a reasonable doubt (*In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073 (1970)), the State may properly rely on certain presumptions or inferences in proving those elements. *Pomykala*, 203 Ill. 2d at 202.

Presumptions may be permissive or mandatory. A permissive presumption allows, but does not require, the trier of fact to infer the existence of the ultimate fact upon proof of the predicate fact, without placing a burden on the defendant. *People v. Jordan*, 218 Ill. 2d 255, 265 (2006), citing *Pomykala*, 203 Ill. 2d at 203; *Watts*, 181 Ill. 2d at 141-42. The fact finder is free to accept or reject a permissive presumption. *Watts*, 181 Ill. 2d at 142, quoting *People v. Hester*, 131 Ill. 2d 91, 99 (1989).

A mandatory presumption, on the other hand, requires the fact finder to accept the presumption. *Jordan*, 218 Ill. 2d at 265, citing *Pomykala*, 203 Ill. 2d at 203; *Watts*, 181 Ill. 2d at 141-42. Mandatory presumptions have been classified as conclusive or rebuttable. *Pomykala*, 203 Ill. 2d at 203; *Watts*, 181 Ill. 2d at 142. The Supreme Court has held that mandatory conclusive presumptions are unconstitutional because they conflict with the presumption of innocence. See *Sandstrom v. Montana*, 442 U.S. 510, 521-23, 61 L. Ed. 2d 39, 49-51, 99 S. Ct. 2450, 2458-59 (1979). In *Sandstrom*, the Supreme Court further held that mandatory rebuttable presumptions shifting the burden of persuasion to a defendant are *per se* unconstitutional, as they relieve the State of the burden of proving each element of the offense beyond a reasonable doubt. *Sandstrom*, 442 U.S. at 524, 61 L. Ed. 2d at 51, 99 S. Ct. at 2459. This court has held that mandatory rebuttable presumptions shifting the burden of production to a defendant are also unconstitutional because they could, in effect, require a trial court to direct a verdict against a defendant on an element proved by the presumption. *Jordan*, 218 Ill. 2d at 266, quoting *Watts*, 181 Ill. 2d at 147. Thus, under Illinois law, all mandatory presumptions are *per se* unconstitutional. *Pomykala*, 203 Ill. 2d at 204.

Here, the child abduction statute states that "the luring or attempted luring of a child under the age of 16 into a motor vehicle, building, housetrailer, or dwelling place without the consent of the parent or lawful custodian of the child shall be prima facie evidence of other than a lawful purpose." 720 ILCS 5/10–5(b)(10) (West 1998). The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). The best indication of legislative intent is the language used in the statute, given its plain and ordinary meaning.

*People ex rel. Ryan v. Agpro, Inc.*, 214 Ill. 2d 222, 226 (2005), quoting *Caveney v. Bower*, 207 Ill. 2d 82, 88 (2003).

According to Black's Law Dictionary, "*prima facie* evidence" is "[e]vidence that will establish a fact or sustain a judgment *unless contradictory evidence is produced.*" (Emphasis added.) Black's Law Dictionary 598 (8th ed. 2004). Likewise, "*prima facie*" is defined as "[s]ufficient to establish a fact or raise a presumption *unless disproved or rebutted.*" (Emphasis added.) Black's Law Dictionary 1228 (8th ed. 2004). Thus, given its plain and ordinary meaning, the term "prima facie evidence" in section 10–5(b)(10) suggests a shift in the burden of production. That shift is made mandatory by use of the term "shall." See *People v. Ramirez*, 214 Ill. 2d 176, 182 (2005) (use of the word "shall" generally indicates legislature intended to impose mandatory obligation). Accordingly, the language "shall be prima facie evidence" creates a mandatory presumption. Specifically, it shifts the burden of production to the defendant as to the unlawful purpose element of the offense of child abduction by requiring the finder of fact to presume the existence of an unlawful purpose upon proof that the defendant lured a child into a vehicle, building, housetrailer, or dwelling place without the consent of the child's parent. See 720 ILCS 5/10–5(b)(10) (West 1998). In accordance with *Watts*, this mandatory rebuttable presumption is unconstitutional.

This conclusion is supported by our decision in *Pomykala*. In *Pomykala*, we considered the constitutionality of a presumption in the reckless homicide statute. *Pomykala*, 203 Ill. 2d at 202. The presumption provided that being under the influence of alcohol or any other drug at the time of the alleged offense " 'shall be presumed to be evidence of a reckless act unless disproved by evidence to the contrary.' " *Pomykala*, 203 Ill. 2d at 202, quoting 720 ILCS 5/9–3(b) (West 2000). We noted that "[t]his court has interpreted the word 'shall' to connote a mandatory obligation unless the statute indicates otherwise. [Citation.] In addition, the word 'presume' in this context means 'to suppose to be true without proof.' [Citation.]" *Pomykala*, 203 Ill. 2d at 205-06. We concluded that this statutory language could not reasonably be construed as creating a permissive presumption but, rather, it created an unconstitutional mandatory presumption. *Pomykala*, 203 Ill. 2d at 208-09.

We also noted that a prior version of the statute stated that being under the influence of alcohol or any other drug at the time of the alleged offense " 'shall be prima facie evidence of a reckless act.' " *Pomykala*, 203 Ill. 2d at 204, quoting Ill. Rev. Stat. 1991, ch. 38, par. 9−3(b). We did not take a position on the meaning or constitutionality of this language, noting simply that the case law was "in conflict" at the time of our decision on whether the prior version of section 9−3(b) created a mandatory presumption. *Pomykala*, 203 Ill. 2d at 206. There was no need for us to resolve that conflict because the language before us differed from the language in the prior version of the statute. Although we properly limited our holding to the language before us, we noted that, in amending the statute, the legislature intended to incorporate the definition of "*prima facie* evidence." *Pomykala*, 203 Ill. 2d at 205.

Since *Pomykala* was decided, our appellate court has reviewed the constitutionality of other statutes that incorporated the phrase "*prima facie* evidence." See *People v. Quinones*, 362 Ill. App. 3d 385 (2005) (reviewing section 24−5(b) of the Criminal Code of 1961 (720 ILCS 5/24−5(b) (West 2002))); *People v. Miles*, 344 Ill. App. 3d 315 (2003) (reviewing section 16 of the Illinois Credit Card and Debit Card Act (720 ILCS 250/16 (West 2002))). In *Miles*, the appellate court held that "[c]onsistent with the *Pomykala* analysis, if a statute incorporating the definition of '*prima facie*' to establish an element of a criminal offense creates a prohibited mandatory presumption, then a statute that uses the object of the definition, that is, '*prima facie*,' to establish an element is similarly prohibitive." *Miles*, 344 Ill. App. 3d at 319-20. The appellate court, therefore, held that section 16 of the Illinois Credit Card and Debit Card Act created an unconstitutional mandatory presumption. *Miles*, 344 Ill. App. 3d at 320. In *Quinones*, the appellate court also relied on *Pomykala* in finding that the phrase "*prima facie* evidence" in section 24−5(b) of the Criminal Code created an unconstitutional mandatory presumption. *Quinones*, 362 Ill. App. 3d at 394.

Based on *People v. Robinson*, 167 Ill. 2d 53 (1995), the State argues that section 10−5(b)(10) creates a constitutional permissive presumption. In *Robinson*, this court considered whether the State had satisfied its burden of proving the defendant eligible for sentencing as a habitual criminal. *Robinson*, 167 Ill. 2d at 74. The Habitual Criminal Act provided that certified copies of prior convictions constituted *prima facie* evidence of such convictions.

*Robinson*, 167 Ill. 2d at 74. This court stated that *prima facie* evidence, in the criminal context, is in the nature of a presumption, more precisely described as an instructed inference. *Robinson*, 167 Ill. 2d at 75, citing M. Graham, Cleary & Graham's Handbook of Illinois Evidence §304.1, at 114-16 (5th ed. 1990). We stated that *prima facie* evidence may be defined as a quantum sufficient to satisfy the burden of production on a basic fact that allows an inference of a presumed fact. *Robinson*, 167 Ill. 2d at 75, citing M. Graham, Cleary & Graham's Handbook of Illinois Evidence §302.8, at 102 (5th ed. 1990). When the burden of production is satisfied, the fact finder is permitted but not required to find the presumed fact. *Robinson*, 167 Ill. 2d at 75, citing M. Graham, Cleary & Graham's Handbook of Illinois Evidence §304.1, at 115-16 (5th ed. 1990).

*Robinson* is inapposite because it dealt with whether the State produced sufficient evidence to prove the defendant's eligibility for sentencing as a habitual criminal. *Robinson*, 167 Ill. 2d at 74. To the extent *Robinson* discussed the meaning of "*prima facie* evidence," it determined whether the State presented sufficient evidence to satisfy its burden of persuasion on the fact of the defendant's 1984 armed robbery conviction. *Robinson*, 167 Ill. 2d at 75. As *Robinson* noted, "[o]nce the burden of production is satisfied, the judge is permitted but not required to find the burden of persuasion satisfied depending on the judge's consideration of all the evidence. The defendant's introduction of contradictory evidence does not diminish the *prima facie* evidence, but such evidence is considered by the trial judge in determining whether the State has satisfied the burden of persuasion." *Robinson*, 167 Ill. 2d at 75. In *Robinson*, the issue of whether the "shall be prima facie evidence" language contained in the Habitual Criminal Act created an unconstitutional mandatory presumption was not before this court.

Consistent with *Pomykala*, we conclude that the plain meaning of the phrase "shall be *prima facie* evidence" in section 10–5(b)(10) is that the ultimate fact must be presumed upon proof of the predicate facts unless disproved by evidence to the contrary. The plain language of section 10–5(b)(10) incorporating "shall be *prima facie* evidence" creates a facially unconstitutional mandatory presumption.

As a final point, the State has relied upon several prior appellate court cases interpreting section 10–5(b)(10) as creating a constitutional permissive presumption. See *People v. Tirado*, 254 Ill. App. 3d 497 (1993); *People v. Joyce*, 234 Ill. App. 3d 394 (1992);

*People v. Marcotte*, 217 Ill. App. 3d 797 (1991); *People v. Embry*, 177 Ill. App. 3d 96 (1988). The appellate court has reasoned that section 10–5(b)(10) " 'speaks in terms of *prima facie* evidence and there is no restraint on the trier of fact′s ability to accept or reject the inference.' " *Tirado*, 254 Ill. App. 3d at 510, quoting *Embry*, 177 Ill. App. 3d at 101. These appellate court decisions interpreting section 10–5(b)(10) as permissive are inconsistent with our construction of that section as an unconstitutional mandatory presumption. Accordingly, we hereby overrule *Tirado*, *Joyce*, *Marcotte*, and *Embry* to the extent that those cases are inconsistent with our decision.

Next, we must consider whether the unconstitutional mandatory presumption is severable from the remainder of the statute. An unconstitutional presumption may be severed from a statute if what remains is complete in itself and capable of being executed independently of the severed portion. *Jordan*, 218 Ill. 2d at 267, citing *Pomykala*, 203 Ill. 2d at 209. Statutory provisions are not severable when they are essentially and inseparably connected in substance, and the legislature would not have passed the valid portions without the invalid portions. *Jordan*, 218 Ill. 2d at 267, citing *Watts*, 181 Ill. 2d at 151.

In *Watts*, this court severed an unconstitutional mandatory presumption from the Home Repair Fraud Act. *Watts*, 181 Ill. 2d at 151. The presumption required the fact finder to presume that the defendant intended not to perform work as promised upon proof of three predicate factors, unless that presumption was rebutted. *Watts*, 181 Ill. 2d at 141. In finding that the unconstitutional presumption was severable, this court reasoned, in part, that the remainder of the statute could be executed without the presumption because that provision operated only to ease the State′s burden of proof on the intent element of the offense. *Watts*, 181 Ill. 2d at 151.

Here, the first sentence of section 10–5(b)(10) contains all of the elements of the offense of child abduction. It is complete in itself and capable of being executed without the mandatory presumption set forth in the second sentence. The mandatory presumption operates only to ease the State′s burden of proving an element of the offense, namely, the defendant′s unlawful purpose. See *Watts*, 181 Ill. 2d at 151. The excision of the unconstitutional presumption does not impair the meaning or operation of the remainder of the statute. We therefore conclude that the second sentence of section 10–5(b)(10) may be severed from the remainder of the statute.

Finally, we consider whether application of the presumption in this case was harmless error. A constitutional error is harmless if it appears beyond a reasonable doubt that the error did not contribute to the verdict. *People v. Patterson*, 217 Ill. 2d 407, 428 (2005). The Supreme Court has established a two-part test for determining whether application of an unlawful presumption is harmless error. *Yates v. Evatt*, 500 U.S. 391, 404, 114 L. Ed. 2d 432, 449, 111 S. Ct. 1884, 1893 (1991), overruled on other grounds by *Estelle v. McGuire*, 502 U.S. 62, 72 n.4, 116 L. Ed. 2d 385, 399 n.4, 112 S. Ct. 475, 482 n.4 (1991). First, the reviewing court must determine what evidence the trier of fact actually considered in reaching the verdict. Second, the court must weigh the probative force of the evidence actually considered by the trier of fact against the probative force of the presumption standing alone. *Yates*, 500 U.S. at 404, 114 L. Ed. 2d at 449, 111 S. Ct. at 1893. The issue is whether the trier of fact rested its verdict on evidence that establishes the presumed fact beyond a reasonable doubt, independently of the presumption. *Yates*, 500 U.S. at 404, 114 L. Ed. 2d at 449, 111 S. Ct. at 1893. A court must determine whether the force of the evidence presumably considered by the trier of fact is "so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption." *Yates*, 500 U.S. at 404-05, 114 L. Ed. 2d at 449, 111 S. Ct. at 1893.

Unlike *Yates*, this case was tried to the court rather than a jury. The trial court's findings on the record give us some insight into the basis for the finding of guilty. The trial court mentioned the presumption, but also relied upon defendant's statement and his conduct in finding that he acted with other than a lawful purpose. The court also referred to the videotape in its findings. There is nothing in the record indicating that the court declined to consider any of the evidence presented by the parties. We conclude that the trial court considered all of the evidence in finding defendant guilty.

We must, therefore, weigh the probative force of all the evidence on whether defendant acted with other than a lawful purpose against the probative force of the presumption standing alone. The required showing that a defendant had "other than a lawful purpose" is essentially a statement of the criminal intent, or *mens rea*. Criminal intent is a state of mind that is usually inferred from the surrounding circumstances. *Maggette*, 195 Ill. 2d at 354. Here, defendant gave a statement highly illustrative of his state of mind. Defendant's

statement may be used to establish his purpose in luring the children into his residence without improperly infringing on his first amendment rights. See *Wisconsin v. Mitchell*, 508 U.S. 476, 489, 124 L. Ed. 2d 436, 448, 113 S. Ct. 2194, 2201 (1993) (the first amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent").

In his statement, defendant asserted that he was sexually excited by seeing the open zipper on one of the girls' pants and the girl's exposed stomach. Defendant stated he hoped to see more of that girl's body. Further, he thought about masturbating in the presence of the girls. Defendant also fantasized about seeing the girls "naked 'cat fighting' " and about having sex with them. Defendant's statement is replete with references to his sexual intent and purpose. At a minimum, the statement permits an inference that defendant intended to commit the offense of sexual exploitation of a child by masturbating in the presence of the children. 720 ILCS 5/11–9.1 (West 1998). A trier of fact could also infer from the statement that defendant intended to have sex with the children if given the opportunity, thus committing the offense of predatory criminal sexual assault of a child. 720 ILCS 5/12–14.1 (West 1998).

The evidence also showed that defendant lured these children into his residence on two separate occasions with the offer of viewing themselves on the videotapes. The children were eight and nine years old. The parents did not consent to their children being inside defendant's residence. In fact, the second incident was interrupted by the father of one of the children coming to retrieve his child. When the mother of two of the children later demanded the videotape, defendant initially refused and only produced the videotape after she threatened to call the police. Defendant admitted he knew it was wrong to have the children inside his residence without the consent of their parents.

Additionally, defendant told the children not to tell their parents or anyone else that they had been inside his residence. The facts, therefore, show that defendant intended for these events to remain secret. Defendant's unlawful purpose is further shown by his attempt to view and videotape the girl with her zipper down and his attempt to see more of the bodies of the children by encouraging them to do an "Olympics show."

We find that this evidence, considered independently of the presumption in section 10–5(b)(10), overwhelmingly establishes

defendant's unlawful purpose in luring the children into his residence. The application of the unconstitutional presumption is "unimportant in relation to everything else" the court considered on this issue. See *Yates*, 500 U.S. at 403, 114 L. Ed. 2d at 449, 111 S. Ct. at 1893. We conclude that the finding of guilt based upon all the evidence of defendant's unlawful purpose would have been the same in the absence of the presumption. Thus, the application of the presumption in this case was harmless beyond a reasonable doubt.

## III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court, except as it concerns the circuit court's HIV/AIDS and genetic marker testing orders. Those orders are not at issue in this appeal and we make no comment on them. The judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE BURKE took no part in the consideration or decision of this case.